UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                         :
MAURICE ROBINSON,
                                                         :
                                        Plaintiff,       :        11 Civ. 02480 (PAC) (DF)
                                                         :
                -against-                                :        **REPORT AND**
                                                         :        **RECOMMENDATION**
GARY LOCKE, Secretary,
United States Department of Commerce                     :
Bureau of the Census Agency,
                                                         :
                                        Defendant.
-----------------------------------------------------------------------X

**TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:**

In this action, *pro se* plaintiff Maurice Robinson ("Plaintiff") seeks damages against his

former employer, the United States Department of Commerce, for unlawful discrimination

against him on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* ("Title VII").  Specifically, Plaintiff asserts claims that, shortly after

being hired by the United States Census Bureau (the "Census Bureau" or "Bureau"), a division

of the Department of Commerce, the Census Bureau unlawfully terminated his employment

because he is African American.

Defendant Gary Locke, Secretary of the Department of Commerce ("Defendant") has

moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  (Dkt. 10.)  In his motion, Defendant argues that Plaintiff failed to exhaust his

administrative remedies because, although he filed an administrative complaint before

commencing suit, he did not raise any claims of racial discrimination in that administrative

complaint.  (*See generally* Memorandum of Law in Support of Defendant's Motion To Dismiss,

1

dated July 11, 2011 ("Def. Mem.") (Dkt. 11).)  Plaintiff responds that he did not learn, until

later, that "racial discrimination came into play."  (Plaintiff's Affirmation in Opposition to

Motion ("Pl. Affirm."), dated Aug. 3, 2011 (Dkt. 18.).)

 For the reasons discussed below, I recommend that Defendant's motion to dismiss be

denied.

## BACKGROUND

### A. Factual Background

 Based on the allegations of Plaintiff's Complaint, which are taken as true for purposes of

this motion (*see* Discussion Section I(A), *infra*), in February 2010, Plaintiff took a qualifying test

to be hired by the Census Bureau as an "Enumerator," and, although he passed the test, he took it

again in March 2010 to try to improve his score, and, the second time, he did "very well."

(Complaint, dated Apr. 1, 2011 ("Compl.") (Dkt. 2), at 5.[1])  On March 23, though, before he was

hired, Plaintiff was arrested on the Columbia University campus for trespassing, together with a

friend who was a Columbia student.  (*Id*.; *see also* Compl., Ex. 1,[2] at 21-22 (criminal charge,

dated Mar. 23, 2010 ("Criminal Charge")).  According to the criminal charge, neither Plaintiff

nor his friend was able to "provide Columbia University identification, . . . [or] to provide the

identity of a [Columbia University] resident of whom defendant was an invited guest."

(Criminal Charge, at 1.)  Plaintiff contends that he met his friend at the school's campus in order

 [1] Plaintiff has submitted a 4-page form complaint, with additional attached pages that are
unnumbered.  For ease of reference, this Court has assigned numbers to those pages, starting
with "5."

 [2] As Exhibit 1 to his Complaint, Plaintiff submits a set of documents, which include, *inter
alia*, documents related to his administrative complaint, his hiring, and certain criminal
proceedings, but has not sequentially numbered the pages of the exhibit.  For ease of reference,
the Court has assigned numbers to the pages of this exhibit, starting with "1."

to obtain assistance with an essay for his graduate school application and that a university security guard arrested them only because he "had issues with minorities being a minority himself." (Compl., at 5; *see also* Declaration of Kathryn H. Anderson, dated July 11, 2011 ("Anderson Decl.") (Dkt. 12), Ex. A, at 1-10 (Complaint of Employment Discrimination Against the U.S. Department of Commerce, filed on July 1, 2010 ("Administrative Compl.")).) According to Plaintiff, he and his friend were taken before a judge, who informed them that, if the friend could produce his student ID card, the charges against them would be dropped. (*Id.*) They were told to return to court on May 6, 2010. (*Id.*)

Meanwhile, Plaintiff received a call from the Census Bureau, informing him that the Bureau wanted to hire him, and that he should start training on April 26, 2010. (*Id.*) Plaintiff reported for the training, and, at that time, was required to fill out paperwork that included a question asking whether he had ever been arrested. (*Id.*) Plaintiff answered the question truthfully. (*Id.*) A short time thereafter, Plaintiff was informed that he had been hired by the Census Bureau. (*Id.*; *see also* Def. Mem., at 1 (stating that, "[o]n April 27, 2010, [Plaintiff] was hired by the Census Bureau for temporary employment as an enumerator . . .").) Then, on May 2, 2010, Plaintiff was told to report for finger-printing. (Compl., at 5.) He did so, and was told that "it would be a little bit of time and then [he] would start [his] assignment." (*Id.*)

On May 6, 2010, Plaintiff returned to court. (*Id.*) Plaintiff's friend produced his Columbia ID, and the charges against both Plaintiff and his friend were dropped and the case dismissed. (*Id.*) Yet, when Plaintiff called the Census Bureau on the following day, May 7, 2010, he was told that "they let [him] go from the Census after [he] was hired and that [he] was terminated." (*Id.*, at 5-6; *see also* Def. Mem., at 1 ("On May 6, 2010, the Census Bureau terminated [Plaintiff's] temporary appointment after reviewing his fingerprint record from the

3

FBI criminal history database, as well as the past criminal history information disclosed on the Optional Form ('OF') 306 [Plaintiff] completed at hire." (internal quotations and citation omitted)).)  Plaintiff was also told that, in order to be "rehire[d]," he would need to produce a certificate of disposition of the criminal case.  (*Id.*, at 6.)  Plaintiff obtained the certificate of disposition and sent it to the Bureau, but, although Plaintiff "gave every chance for the Census to rectify the situation[, . . .] they made no attempt to [do so]."  (*Id.*)

Although, at the time of his termination, Plaintiff believed that he had been discriminated against because he had been arrested, he later came to believe, from a news article given to him by an attorney on October 15, 2010, that the Census Bureau's screening practices for new hires were racially biased.  (*Id.*, at 6-8; *see also* Compl., Ex. 1, at 26 (email from Todd Albert, Esq. to Plaintiff, dated Oct. 15, 2010).)  According to that article, as quoted by Plaintiff in his Complaint, a class action lawsuit had been filed in this Court, in April 2010, by a "coalition of civil rights organizations," challenging, as having a disproportionate impact on certain minorities, the Bureau's practice of disqualifying employees based on their criminal histories, including histories of "unprosecuted arrests."  (Compl., at 6 (internal quotation marks and citation omitted).)[3]

**B.    Procedural Background**

**1.    Administrative Proceedings**

Plaintiff's letter of termination from the Census Bureau informed him of his Equal Employment Opportunity ("EEO") rights and advised him as follows:  "If you believe the decision to terminate your appointment was motivated by discrimination on the basis of race,

---

[3] The putative class action suit referred to by Plaintiff is *Johnson, et al. v. Locke,* 10 Civ. 3105 (FM) (S.D.N.Y.) ("*Johnson*").

color . . ., you may pursue a complaint through the Census Bureau's [EEO] complaint process."
(Compl., Ex. 1, at 17 (Letter to Plaintiff, from the Census Bureau, dated May 6, 2010).)  The
letter further advised Plaintiff that he was required to contact the Census Bureau's EEO Office
within 45 days of the effective date of his termination.  (*Id.*)  Plaintiff timely initiated contact
with the EEO Office on June 3, 2010 and completed an EEO intake "Session Worksheet."  (*See
id.*, at 11 (Counselor's Report of the US Census Bureau, dated June 16, 2010 ("6/16/10
Report").)  In this form, Plaintiff alleged that the Census Bureau had wrongfully terminated him
by not following its own procedures in conducting his background check.  (*See* Anderson Decl.,
Ex. B (Equal Employment Opportunity Decennial Intake Session Worksheet, undated ("EEO
Worksheet")); 6/16/10 Report, at 1.)  Plaintiff did not allege wrongful termination on the basis of
race, nor did the worksheet identify that he was African American.  (*See generally* EEO
Worksheet.)

    After interviewing Plaintiff, an EEO counselor submitted a report on June 16, 2010.  (*See*
6/16/10 Report.)  This report, similar to Plaintiff's worksheet, indicated that Plaintiff was
alleging that he had been discriminated against because, as a result of his background check, he
was terminated and determined to be ineligible for employment.  (*See id.*)

    On June 29, 2010, the Census Bureau sent Plaintiff a Notice of Right to File, with two
attachments.  (*See* Anderson Decl., Ex. A, at 11-13 (Notice and Certification of Final Interview
and Notice of Right to File a Formal Complaint, dated June 29, 2010).)  The first attachment
explained that Plaintiff could file a Title VII complaint, if the Census Bureau discriminated
against him because of his race or color.  (*See id.*, at 12.)  The second listed all the bases for
allegations of violations under Title VII.  (*See id.*)

5

On July 1, 2010, Plaintiff filed a formal complaint with Census Bureau's EEO Office, claiming that he was unlawfully discriminated against by the Bureau.  (*See* Administrative Compl.)  In this complaint, Plaintiff did not place a check mark in the box designated for discrimination on the basis of race.  (*See id.*, at 1.)  Instead, Plaintiff only discussed his arrest at Columbia University and the subsequent criminal proceedings.  (*See id.*, at 1, 11.)  Plaintiff did not allege any discrimination in violation of Title VII on the basis of his race.  (*See generally id.*)

On October 1, 2010, the Census Bureau issued its Final Agency Decision ("FAD"), dismissing Plaintiff's complaint for failure to state a claim because he did not allege discrimination under any grounds protected by Title VII.  (*See* Dkt. 2, at 36 (Final Agency Decision – Procedural, dated Oct. 1, 2010); *id.*, Ex. 1, at 1-6.)

In a letter to the United States Equal Employment Opportunity Commission ("EEOC"), dated November 6, 2010, Plaintiff appealed the FAD, and, for the first time, identified himself as Black and alleged that the Census Bureau had discriminated against him on the basis of his race. (*See* Dkt. 2, at 34-35 (Letter to EEOC, from Paul Keefe, Esq., dated Nov. 6, 2010 ("11/6/10 Ltr.")).)  In this letter, Plaintiff (who was then represented by counsel), argued that the Commerce Department employee who had dismissed his complaint, Kathryn H. Anderson ("Anderson"), had previously corresponded with Plaintiff's counsel regarding the *Johnson* class action (*see* n.2, *supra*), and thus was aware that Plaintiff's claims were cognizable under Title VII on a disparate-impact theory, "yet neither she nor anyone else advised [Plaintiff] about the technical deficiency in his complaint."  (11/6/10 Ltr.)  Plaintiff argued that he was not seeking to add a new theory on appeal; rather, he asserted, he had always alleged discrimination based on his arrest record, and had merely failed to characterize that discrimination properly, as race discrimination in violation of Title VII.  (*Id.*)

6

On February 7, 2011, the EEOC dismissed Plaintiff's administrative appeal and affirmed the FAD. (*See* Compl., at 9-12 (EEOC decision, dated Feb. 7, 2011).) The EEOC determined that the complaint did not allege that Plaintiff was subjected to discrimination on any EEO-protected basis. (*See id.*) The EEOC also noted that Plaintiff could not cure a complaint that failed to designate a basis for the alleged discrimination, by making such an allegation for the first time on appeal. (*See id.*)

### 2. Plaintiff's Complaint in this Action

Plaintiff commenced this action on April 1, 2011, alleging that he was unlawfully discriminated against under Title VII on the basis of his race when the Census Bureau terminated his employment. (*See generally* Compl.)

Although it appears that Plaintiff filed his initial charge with his EEO counselor on June 3, 2010 (*see* 6/16/10 Report), Plaintiff states in his Complaint that he filed that charge on May 6, 2010 (Compl., ¶ III(A)). In any event, he alleges that the EEOC issued a Notice of Right to Sue letter, which he received on February 7, 2011. (*Id.*, ¶ III(B).)

Plaintiff attached to his Complaint a statement of facts regarding the events underlying his allegations of discrimination. (*See id.*, at 5-8.) In addition, Plaintiff attached various documents from the administrative proceedings, including documents apparently submitted to the EEO Office and the administrative decisions he received. (*See id.*, at 9-33.)

### 3. Defendant's Motion To Dismiss the Complaint

Defendant filed his motion to dismiss Plaintiff's Complaint on July 11, 2011. (*See* Dkt. 10.) Defendant argues that Plaintiff's claim should be dismissed because Plaintiff failed to exhaust his administrative remedies by filing an administrative claim alleging racial discrimination. (*See generally* Def. Mem.)

7

Plaintiff filed an Affirmation in opposition to Defendant's motion on August 3, 2011. (*See* Pl. Affirm.)  In his Affirmation, Plaintiff essentially argues that Defendant's motion should be denied because he did not know, at the time of his administrative complaint, that he had been discriminated against on the basis of his race and that the Census Bureau was being investigated for racial discrimination.  (*See id.*)  Plaintiff also argues that he has not been able to obtain discovery from the EEOC, specifically including "case files for other plaintiffs against the [D]efendant[]."  (*Id.*)

## DISCUSSION

## I.  APPLICABLE LEGAL STANDARDS

### A.  Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997).  Further, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting authority); *see also Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (a *pro se* party's pleadings must be liberally construed in his favor and are held to a less stringent standard than the pleadings drafted by lawyers).

The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (citation omitted).  At the same time,

"conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted). Rather, in order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

In ruling on a motion to dismiss, a court may consider any facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). The court may also consider documents that the plaintiff "either possessed or knew about and upon which [he] relied in bringing . . . suit." *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000); *see also Chambers v. Rime Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotations omitted)); *Magnifico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (recognizing that the court can consider documents on which plaintiff relied in bringing suit). Similarly, the Court may consider the EEOC administrative record in ruling on a motion to dismiss a Title VII case. *See, e.g., Holowecki v. Federal Express Corp.*, 440 F.3d 557, 565 (2d Cir. 2006) ("In reviewing the Rule 12(b)(6) ruling, it is proper for this court to consider the plaintiff['s] relevant filings with the EEOC . . ., none of which were attached to the complaint, because the . . . plaintiffs[] rely on these documents to satisfy the ADEA's time limit requirements."), *aff'd*, 552 U.S. 389 (2008); *Marshall v. Nat'l Ass'n of Letter Carriers*, Nos. 00 Civ. 3167 (LTS), 01 Civ. 3086 (LTS), 2003 WL 223563, at *8 n.3 (S.D.N.Y. Feb. 3, 2003)

(considering Precomplaint Counseling Form, EEO Complaint, EEO agency's final decision, and EEOC decision in ruling on a Rule 12(b)(6) motion to dismiss).

### B.   Exhaustion Requirement for Title VII Claims

Under Title VII, an employee may bring a claim for damages against a federal employer for unlawful employment discrimination.  *See West v. Gibson*, 527 U.S. 212 (1999).  In order to gain access to the courts, however, Title VII requires a plaintiff first to "exhaust available administrative remedies in a timely fashion."  *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996).  To satisfy this exhaustion requirement, the plaintiff "must seek relief in the agency that has allegedly discriminated against him."  *Brown v. General Servs. Admin*., 425 U.S. 820, 832 (1976).  "[T]he purpose of [the exhaustion requirement] is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, which would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC."  *Coleman v. Bd. Of Educ., City of New York*, No. 96 Civ. 4293, 2002 WL 63555, at *3 (S.D.N.Y. Jan. 16 2002).

As a general matter, a federal court complaint must be limited to the scope of the plaintiff's prior administrative complaint.  *See Butts v. City of New York*, 990 F.2d 1397, 1401-02 (2d Cir. 1993).[4]  Courts will not permit a claim to proceed where that claim is based on a wholly different type of discrimination than that asserted in the EEOC charge.  *See Peterson v. Ins. Co. of N. Am.*, 884 F. Supp. 107, 109 (S.D.N.Y. 1995) (quotation marks and citation omitted).  Rather, the court may only hear Title VII claims that are either included in an EEOC

---

[4] As recognized in *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998), one of the holdings in *Butts*, related to 42 U.S.C. § 1981 (and thus not relevant here), was subsequently overridden by statute.  *See Hawkins,* 163 F.3d at 693.

charge or are "reasonably related" to the allegations included in that charge. *See Butts*, 990 F.2d at 1402.

One way in which a plaintiff's claim may be found to be "reasonably related" to his administrative charge is where the claim would "reasonably be expected to grow out of the charge" that was alleged, and where the challenged conduct thus could have been expected to "fall within the scope of the EEOC investigation." *Butts*, 990 F.2d at 1402 (internal quotation marks and citation omitted).[5] The allowance of a plaintiff's claim in such a circumstance is "essentially an allowance of loose pleading," *id.*, intended to "[r]ecogniz[e] that EEOC charges are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering," *Minetos v. City University of New York*, 875 F. Supp. 1046, 1052 (S.D.N.Y. 1995) (citing *Butts*, 990 F.2d at 1402).

In determining whether a claim would have reasonably fallen within the scope of an EEOC investigation, "the focus [of courts] should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks and citation omitted). In other words, "it is the substance of the charge and not its [legal] label that controls." *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998). For this inquiry, the court should "look not merely to the four corners of the . . . charge," *Gomes v. AVCO Corp., et al.,* 964 F. 2d 1330, 1334 (2d. Cir. 1992), but rather should consider the factual

---

[5] Although not relevant here, a claim may also be found to be "reasonably related" to an administrative charge where it alleges retaliation by an employer for the plaintiff's filing of the EEOC charge, or where it alleges "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1402-03.

allegations "in light of the context" of the case, *Dargento v. Bally's Holiday Fitness*, 990

F. Supp. 186, 192 (W.D.N.Y. 1997).

Moreover, although the administrative filing requirement has been held to be an

"essential element of Title VII's statutory scheme," *Butts*, 990 F.2d at 1401, the federal courts

still "have resort to all of their traditional equity powers, direct and incidental, in aid of the

enforcement of the [statute]," *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 885 (2d Cir.

1982).   Thus, despite the importance of administrative exhaustion, it may be waived where

equity warrants.   *See Grey v. Promenade Rehabilitation and Care Center*, 145 Fed. App'x 705,

707 (2d Cir. 2005) (noting that "administrative exhaustion requirements may be waived to serve

equity"); *Frank v. New York State Electronic & Gas*, 871 F. Supp. 167, 171-72 (W.D.N.Y. 1994)

(stating that "the court may allow a plaintiff to proceed with a Title VII suit, even if he or she

failed to file a charge at the agency level, if the record demonstrates sufficient equitable

reasons") (citing *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 23-24 (2d

Cir. 1985)).

## II.   **DEFENDANT'S MOTION**

In its motion, Defendant argues that, on its face, the administrative charge filed by

Plaintiff cannot suffice to have exhausted his race-discrimination claim, as Plaintiff never

mentioned such a claim.   (*See generally* Def. Mem.)   Ordinarily, this would be a straightforward

matter, as Defendant is correct that Plaintiff's administrative charge is indeed silent on the issue

of race, and, normally, this would lead the Court to conclude that the Bureau and the EEOC were

not placed on fair notice of Plaintiff's race-discrimination claim.   *See, e.g.*, *Benjamin v. New

York City Dep't of Health*, 144 Fed. App'x 140, 142 (2d Cir. 2005) (dismissing a Title VII

national-origin claim where plaintiff's "administrative complaint, which focused exclusively on her 'dark skin' as the source of the discrimination she suffered, did not reasonably (or in fact) give rise to any administrative consideration of whether [she] suffered discrimination because of her [national] . . . origin as opposed to her race"); *De La Cruz v. Guilliani*, No. 00 Civ. 7102, 2002 WL 32830453, at *14-15 (S.D.N.Y. Aug. 26, 2002) (where plaintiff checked "disability" and "retaliation" on her administrative complaint, but not "gender" or "race/national origin," finding dismissal appropriate, as EEOC had "properly . . . limited its investigation" to claims raised administratively).

This case, however, presents unusual facts that should be viewed in context.  Plaintiff initially may have had no reason to believe that his firing was the result of a racially discriminatory policy, but, at the time he filed his administrative charge, the Census Bureau and the EEOC were both well aware of exactly that possibility.  In fact, as alluded to by Plaintiff in his Complaint in this Court (*see* Compl., at 6-7), and as emphasized by Plaintiff's counsel in his letter to the EEOC on Plaintiff's administrative appeal (*see* 11/6/10 Ltr.), the claim that Plaintiff filed with the Census Bureau's EEO Office came on the heels of the filing of a separate class action lawsuit against Defendant (the *Johnson* case), alleging that the Bureau's policy of screening applicants based on minor criminal records was a proxy for race discrimination.[6]  The class action complaint in *Johnson* was apparently handled, at least in the first instance, by the

---

[6] The *Johnson* complaint was filed in this Court on April 13, 2010.  (*See Johnson* Dkt. 1.) Plaintiff's initial administrative charge was made less than two months later, on June 3, 2010 (*see* 6/16/10 Report (referring to intake worksheet dated June 3, 2010); *see also Holowecki*, 440 F.3d at 568 (holding that intake questionnaire may constitute an administrative charge); his formal administrative complaint was filed on July 1, 2010 (*see* Administrative Compl.).

very individual within the Bureau (Anderson) who was responsible for handling Plaintiff's administrative charge.  (*See* 11/6/10 Ltr.)

Indeed, during Anderson's tenure as Deputy Director of the Office of Civil Rights at Department of Commerce, a position in which she claims to have been responsible for "overseeing the processing of formal administrative complaints for the 2010 Decennial Census" (Anderson Decl., ¶¶ 1-2), it appears that a number of complaints were made about the alleged discriminatory impact of the Bureau's screening policy (*see, e.g.*, *Johnson* Dkt. 44, Exs. 1, 6, 7, 8).[7]  Anderson states that she has held her current position since August of 2008 (Anderson Decl., ¶ 1), and papers filed in the *Johnson* case suggest that the Bureau began receiving such complaints as early as October 2008 (*see Johnson* Dkt. 44, Ex. 1 (Complaint of Employment Discrimination Against the U.S. Department of Commerce, dated Oct. 27, 2008)).  In fact, the *Johnson* filings show that, by July 2009, the EEOC had itself written to the Bureau, noting that it had been made aware of "numerous instances nationwide in which the . . . Bureau told people applying or training to be enumerators for the 2010 Census that their record of an arrest or conviction would disqualify them unless shown to be incorrect" (*see Johnson* Dkt. 44, Ex. 28 (Letter to Gary Locke and Thomas L. Mesenbourg, from Stuart J. Ishimaru, dated July 10, 2009), at 1), and informing the Bureau that "Title VII is implicated when an employer excludes

--------

[7] In the *Johnson* case, the plaintiffs have filed copies of several earlier administrative complaints and related documents regarding the Bureau's screening policy.  This Court may take judicial notice of the existence of these documents, in connection with Defendant's Rule 12(b)(6) motion, given that Defendant has had notice of them.  *See, e.g.*, *Cortec Industry, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding that, on Rule 12(b)(6) motions, courts may consider documents of which the parties had notice); *OneBeacon Ins. Co. v. Empress Ambulance Service, Inc.*, No. 02 Civ. 2595 (WHP), 2003 WL 1857622, *3 (S.D.N.Y. Mar. 28, 2003) (taking judicial notice of exhibit in separate bankruptcy action where plaintiff's pleading both referred to that separate action and alleged that defendants were aware of it).

applicants because of a criminal record because such exclusions almost always have a disproportionate effect on African Americans and Hispanics" (*id.*).  The EEOC specifically informed the Bureau that the information the EEOC had received about the parameters of the Bureau's screening policy suggested that the policy was "overbroad" and might "run afoul of Title VII."  (*Id.*)

Further, once the *Johnson* class action suit was filed, it appears that, in more than one instance, Anderson opted to hold a complainant's administrative charge in abeyance based on Anderson's determination that the complainant would have been "within the [*Johnson*] putative class."  (*See* Compl., Ex. 1, at 7-8 (Letter to Paul Keefe, Esq., from Anderson, dated May 21, 2010); *see also Johnson* Dkt. 44, Ex. 10, at 1 (Letter to Sharon M. Dietrich, Esq., from Anderson, dated Sept. 9, 2010).)  In these instances, the claimants were represented by counsel, and Anderson gave counsel notice of the *Johnson* action.  (*See id.*)  In Plaintiff's case, however, it does not appear that Anderson gave Plaintiff – who was proceeding *pro se* before the Bureau's EEO Office – any notice of the *Johnson* case, or even acknowledged in any way that his charge could relate to the claims raised in *Johnson*.

Although, to date, no class has been certified in *Johnson*, and Plaintiff may not qualify as a class member in that case,[8] the similarity of the alleged facts underlying Plaintiff's claim to the

---

[8] The *Johnson* complaint includes the following class definition:

> All African American, Latino, and Native American persons who applied for temporary employment with the United States Census Bureau for positions including but not limited to Census Takers (also known as Enumerators) . . ., who were sent a 30-day notice to produce official court documentation or fingerprints, for whom there was no record of conviction, or who were otherwise suitable for employment because they do not present a legitimate threat to the public safety or integrity of the counting process, and who

facts underlying the claims of the named plaintiffs in *Johnson* are notable.  One of those

plaintiffs, for example, alleges that he was arrested, but the criminal charge against him was

dismissed; that he was asked by the Census Bureau for documentation regarding the disposition

of the criminal case; that, within days, he provided documentation showing that the charge had

been dropped; but, although he was told by the Bureau that the matter would be cleared, he never

received any further word regarding his employment.  (*See Johnson* 1st Am. Compl., at

¶¶ 88-89.)  Plaintiff's termination also seems to have been markedly similar to that of a

complainant who submitted a discrimination charge, to Anderson's attention, in September

2010, while Plaintiff's charge with the Bureau's EEO Office was pending.  (*See Johnson*

Dkt. 44, at Ex. 15, at 1-3.)  Like Plaintiff, this complainant alleged that she was hired as an

Enumerator, but was then "sent home" within days because of her minor criminal record.  (*Id.*,

at 2.)

       In sum, the parties' submissions in this case, together with public filings in *Johnson,*

suggest the following:

> (1)      by July 2009, having learned of a number of complaints
> about the Census Bureau's facially race-neutral policy of
> either not hiring or terminating employees based on certain
> types of minor criminal records, the EEOC was well aware
> of the policy's allegedly disparate impact on minorities,
> including African Americans, and even wrote to the Bureau
> to raise its concerns about this policy;

---

were not hired or were terminated by the Census Bureau, between
the commencement of temporary hiring for the 2010 decennial
census and the date of judgment in this action . . . ."

(*Johnson* Dkt. 32 (First Amended Complaint, dated Aug. 5, 2010 ("*Johnson* 1st Am. Compl."),
at ¶ 33.)  At this point, it is unclear whether Plaintiff was sent the "30-day notice" referenced in
this class definition.

(2)     in April 2010, a Title VII class action complaint was filed that challenged the allegedly discriminatory effect of the Bureau's policy of using minor criminal records to screen applicants and employees;

(3)     in June 2010, Plaintiff made a *pro se* administrative charge, claiming that he had been wrongfully terminated from his new job with the Bureau because of his record of an unprosecuted arrest, and presenting facts regarding his loss of employment that were similar to those alleged by the class-action plaintiffs; and

(4)     the individual who processed Plaintiff's claim on behalf of the Bureau was personally familiar both with the class-action suit and with other administrative complaints (made both prior to and contemporaneously with Plaintiff's claim) that challenged, as racially discriminatory, the same type of treatment allegedly received by Plaintiff.

As a result of this history, both the Bureau and the EEOC could have been expected to consider and investigate the question of whether Plaintiff may have been adversely impacted by the Bureau's screening policy because of his race.  In other words, in these particular circumstances, Plaintiff's current race-discrimination claim would have been expected to fall within "the scope of the EEOC investigation" of the administrative charge he did file.  *Butts*, 990 F.2d at 1402 (internal quotation marks omitted).  Thus, Plaintiff's complaint in this Court can be viewed as "reasonably related" to his administrative charge.  *See id.*; *see also Dargento*, 990 F. Supp. at 192, 195 (finding claims reasonably related where, "because of the several, joint complaints about pervasive discriminatory practices, it is certainly not unreasonable to conclude that any investigation by the EEOC would have included an inquiry into all aspects of the charges brought by these three plaintiffs and the other women"); *Virgo v. Local Union 580,* 107 F.R.D. 84, 89 (S.D.N.Y. 1985) (finding claims reasonably related where the EEOC was already investigating alleged discriminatory referral system of defendant union, so that the referral

17

violations alleged by plaintiff for the first time in his federal lawsuit were "not likely to have caught the EEOC by surprise" and would have fallen "within the scope of the EEOC investigation that reasonably could be expected to grow out of the charge [plaintiff] filed with the agency").

Accordingly, and in light of the mandate that Title VII's administrative prerequisites be interpreted liberally to effectuate the statute's purpose of eradicating employment discrimination, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397 (1982),[9] I recommend that the Court find that Plaintiff's administrative charge was sufficient to exhaust the Title VII claim he now seeks to assert.

Alternatively, if the Court is hesitant to find that Plaintiff actually exhausted his race-discrimination claim, I recommend that the Court excuse the exhaustion requirement, on the basis of the particular equities presented.  While this Court does not mean to suggest that the Title VII exhaustion requirement may be easily waived, the policy rationale of that requirement would be well served by waiver in this case.

As noted above, Title VII's exhaustion requirement is designed to ensure that employers are given fair notice of the nature of a claimant's charge and that the EEOC is afforded a fair opportunity to investigate and resolve the matter, prior to litigation.  *See Coleman*, 2002 WL 63555, at *3; *see also Dargento*, 990 F. Supp. at 192.  Given these purposes of the exhaustion requirement, courts have, at least in some circumstances, excused the requirement where the

---

[9] *See also Love v. Pullman Co.*, 404 U.S. 522, 526-27 (1972) (holding that fairness, and not excessive technicality, must guide the consideration of Title VII actions); *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991) (stating that "[b]ecause these charges generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements, we have taken a flexible stance in interpreting Title VII's procedural provisions . . . so as not to frustrate Title VII's remedial goals (internal quotation marks and citation omitted)).

agency and the EEOC have had actual notice of the plaintiff's claim, from a different claimant. Most notably, exhaustion has been excused in the context of class action litigation, where the fact that even a single plaintiff has raised the claim administratively, within the time deadlines set out in Title VII, has been held to suffice – enabling other plaintiffs, with similar claims, to join the class action without having timely exhausted the claims on their own.  *See Snell v. Suffolk County*, 782 F.2d 1094, 1101-02 (2d Cir. 1986).  In *Snell*, the Second Circuit specifically observed that Title VII's administrative filing requirement "could be waived or tolled where deemed equitable by the district court."  *Id.* (relying on *Zipes*, 455 U.S. at 398).  Further, the court reasoned that, "where two plaintiffs allege that they were similarly situated and received the same discriminatory treatment, the purposes of the exhaustion requirement are adequately served if one plaintiff has filed an EEOC complaint."  *Id.* (internal quotation marks and citation omitted).

Other decisions have expanded on *Snell*, adopting its reasoning even in cases not involving a single, class action suit.  For example, in *Tolliver v. Xerox Corp.*, 918 F.2d 1052 (2d Cir. 1990), which extended the "single-filing" rule to claims brought under the Age Discrimination in Employment Act ("ADEA"), the plaintiffs had originally opted into an age discrimination class, but when the class action was decertified, they were forced to pursue their ADEA claims independently, *see id.* at 1055.  Even though the plaintiffs had not exhausted their claims, the Court of Appeals allowed the independent suits, finding "[t]he purpose of the charge filing requirement [to be] fully served by an administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a similar grievance [who did not file a charge] elect to join a preexisting suit or initiate their own."  *Id.* at 1057.  Elaborating

on the requirements of the rule in circumstances "where the grievances are alleged to arise throughout a large group," the court determined that "there must be some indication [in the charge] that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim." *Id.* at 1058. "Such a claim alerts the EEOC that more is alleged than an isolated act of discrimination and affords sufficient notice to the employer to explore conciliation with the affected group." *Id.*

Thus, of particular importance to the court's decision in *Tolliver* was the fact that the initial EEOC charge complained not of isolated incidents of age discrimination, but of systematic ADEA violations occurring throughout defendant's employment operations. *See id.* at 1058-59. Under such circumstances, the court reasoned that requiring later claimants to make essentially identical allegations would be "wasteful" and "nonsensical." *Id.* at 1059 (internal quotation marks and citation omitted).

More recently, in *Cronas v. Willis Group Holdings Ltd.*, No. 06 Civ. 15295 (GEL), 2007 WL 2739769 (S.D.N.Y. Sept. 17, 2007), this Court addressed a case where the plaintiff had been denied leave to intervene in a Title VII class action (in part because her claims arose in a time frame different from that encompassed by the class definition), and sought to commence her own action, *see id.* at *1-2. Even though the plaintiff had not timely filed an administrative charge, the court allowed her suit, reasoning that this would be "consistent with the Circuit's broad interpretation of the single-filing rule." *Id.* at *6 (citing *Tolliver*, 918 F.2d at 1057). The Court stated:

> As long as the claims of a subsequent Title VII plaintiff otherwise fit within the single-filing rule, that is, as long as those claims are 'within the scope' of the prior EEOC charge . . . there is no persuasive reason to require that the subsequent plaintiff also

> obtain a right-to-sue letter for the same charge that previously had
> been filed.

*Id.* at *5 (quoting *Dargento*, 990 F. Supp. at 193).  Indeed, the Court observed that "[t]he EEOC

itself has interpreted the . . . filing requirements to be satisfied so long as the matter complained

of was within the scope of [a] previously filed charge, *regardless of who filed it*."  *Id.* at *5

(quoting *Tolliver*, 918 F.2d at 1057 (emphasis in original) (internal quotation marks omitted)).

The Court found that

> a contrary rule would violate the fundamental principles of
> 'leniency' and 'fairness' that guide the determination of whether a
> Title VII plaintiff has complied with the administrative
> prerequisites . . . and would be 'wasteful' to the EEOC's
> resources . . . as it would require the EEOC to investigate a charge
> that had already been made and effectively reopen an investigation
> that had already concluded.

*Id.* (internal citation omitted).

The case now before the Court does not fit neatly into the single-filing rule that was

adopted in *Snell* and that informed the outcomes of *Tolliver* and *Cronas,* as that rule has

principally been invoked to excuse the lack of a timely administrative filing, not to overlook

defects within a filing that was, in fact, timely made.  In this case, Plaintiff does not need relief

from the Title VII statute of limitations, given that he observed all statutory deadlines in filing an

administrative charge and commencing a federal court action.  The problem here is that, at the

time he filed his administrative charge, Plaintiff may not have been aware of the "big picture,"

and, accordingly, he may have had no reason to believe that his termination resulted from a

racially discriminatory policy.  Rather, at the time, Plaintiff may only have thought to complain

that he was fired unjustly because of his unprosecuted arrest.  *See Sanchez v. Standard Brands,*

*Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) (noting, in the context of the Title VII exhaustion

requirement, that an employee may not be able to "know or believe he is discriminated against unless he knows from what class of person he is treated differently"); *see also Alonzo*, 25 F. Supp. 2d at 458-59 (S.D.N.Y. 1998) (citing *Sanchez*, in excusing defect in *pro se* claimant's administrative filing).  In any event, Plaintiff filed an EEO complaint that did not allege that the Census Bureau's criminal-history screening policy had a disparate impact on African Americans.

As discussed above, however, the plaintiffs in *Johnson*, as well as other claimants, apparently *did* complain that the Bureau's policy was racially discriminatory.  Thus, as in the cases where the single-filing rule has been invoked, this is a case where both the employing agency and the EEOC had ample notice of the broad disparate-impact claim that Plaintiff now seeks to raise, and they should have known to investigate that claim.  *See Tolliver*, 918 F.2d at 1059 (holding that, because the initial EEOC charge complained of systematic, widespread violations, the claims that were made "provided the Commission with ample opportunity to conciliate the broad grievance").  For this reason, the logical underpinnings of the single-filing rule are equally applicable here, and dictate that Plaintiff should be permitted to proceed with his race-discrimination claim, even though he never mentioned "race" in his administrative filing.  Allowing waiver of the exhaustion requirement in this instance, as a matter of equity, *see Grey*, 145 Fed. App'x at 707, would not only be consistent with the policies underlying the single-filing rule, but would best aid in the enforcement of Title VII and serve its remedial objectives.

I therefore recommend that the Court deny Defendant's motion to dismiss Plaintiff's discrimination claim for lack of exhaustion, either on the ground that the exhaustion requirement has been satisfied on the unusual facts of this case, or, alternatively, on the ground that exhaustion should be excused in this case, as a matter of equity.

22

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Defendant's motion to dismiss Plaintiff's Complaint (Dkt.10) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, United States Courthouse, 500 Pearl Street, Room 735, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).  If Plaintiff does not have access to cases cited herein that are electronically reported, he may request copies from Defendant's counsel.  *See* Local Civ. R. 7.2.

Dated:  New York, New York
         February 1, 2012

                              SO ORDERED

                              _____
                              DEBRA FREEMAN
                              United States Magistrate Judge

23

<u>Copies to</u>:

Hon. Paul A. Crotty, U.S.D.J.

Mr. Maurice G. Robinson
5240 Broadway
Apt. #3C
Bronx, NY 10463

Natalie Nancy Kuehler, Esq.
U.S. Attorney's Office
86 Chambers Street
New York, NY 10007